**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LOREN ANN CONWAY,

                Plaintiff,

                                              Case No. 3:14-cv-1004-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Loren Ann Conway ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of "[b]ipolar 1 disorder," depression, anxiety, and insomnia.  See Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed November 6, 2014, at 201.  On October 12, 2010, Plaintiff filed an application for DIB, alleging an onset date of March 15, 2007.  Tr. at 175-76. Plaintiff's application was denied initially, Tr. at 97, 99-101, and was denied upon reconsideration, Tr. at 98, 106-08.

      On April 11, 2012, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from a vocational expert ("VE") and a medical expert ("ME"), clinical

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 9), filed November 6, 2014; Reference Order (Doc. No. 11), entered November 6, 2014.

psychologist Carlos Kronberger, Ph.D.  Tr. at 30-72.  Plaintiff did not appear at the hearing, but her counsel was present.  Tr. at 32.  On November 8, 2012, the ALJ held another hearing during which he heard testimony from Plaintiff, who was represented by counsel. Tr. at 73-96.  At the time of the second hearing, Plaintiff was forty-seven (47) years old.  See Tr. at 175 (Plaintiff's DIB application indicating her date of birth is October 10, 1965).  On December 4, 2012, the ALJ issued a decision ("Decision") finding Plaintiff not disabled "at any time from March 15, 2007, the alleged onset date, through December 31, 2010, the date last insured," and denying Plaintiff's claim.  Tr. at 24; see Tr. at 13-24.  Plaintiff then requested review by the Appeals Council, Tr. at 7, and submitted evidence to the Council in the form of a memorandum authored by her attorney representative, Tr. at 4; see Tr. at 286-87 (representative's brief).  On June 26, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3.  On August 22, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) whether the ALJ "failed to articulate good reasons for not crediting the treating opinions of [Eduardo Sanchez, M.D.] and [Emanuel Martinez, M.D.] and instead deciding to credit the nonexamining opinions of the state agency consultants and the [ME, Dr. Kronberger]"; (2) whether the ALJ "erred in failing to realize that the severity of [Plaintiff's] bipolar disorder impacts her [substance abuse and] ability to be

compliant with medications";[2] and (3) whether the ALJ "failed to explain [his] reasons for not crediting the opinion of [Joshua M. Harrison, M.D.] that [Plaintiff's] psychiatric symptoms are compounded by her hypothyroidism." Plaintiff's Brief (Doc. No. 16; "Pl.'s Br."), filed January 29, 2015, at 1, 10-25 (emphasis omitted). Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") on April 6, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[2]     Although Plaintiff's issue statement for her second issue only addresses medication noncompliance, see Plaintiff's Brief (Doc. No. 16), filed January 29, 2015, at 1, her argument also addresses substance abuse, see id. at 21 (stating that "the ALJ erred in failing to analyze whether [Plaintiff's] noncompliance and substance use was within her control due to her bipolar disorder") (emphasis added).

[3]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry.  <u>See</u> Tr. at 15-24.  All of the following findings of the ALJ apply to the relevant period between Plaintiff's alleged onset date of March 15, 2007, through her last-insured date of December 31, 2010.  <u>See</u> Tr. at 15-24.  At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the [relevant] period."  Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "had the following severe impairments: bipolar disorder and history of alcohol and prescription drug abuse."  Tr. at 15 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 16 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff could] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to the performance of simple rote and repetitive tasks in response to oral or written directives.  Her ability to interact with others is limited to an occasional basis in terms of her ability to interact with the general public, coworkers and supervisors.  [Plaintiff] is able to perform or sustain such unskilled work for 8 hours per day, five days per week or a[n] equivalent work schedule on a sustained or competitive basis.

Tr. at 17 (emphasis omitted). At step four, the ALJ found that Plaintiff "was unable to perform any of her past relevant work" as a nurse.  Tr. at 22-23 (emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age (forty-five (45) years old on the date last insured), education ("more than a high school education"), work experience, and RFC, and the ALJ

determined that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 23 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "laundry laborer," a "housekeeper/maid," a "lens inserter," a "garment sorter," and a "table worker." Tr. at 23-24 (capitalization omitted). The ALJ concluded that Plaintiff "was not under a disability . . . at any time from March 15, 2007, the alleged onset date, through December 31, 2010, the date last insured." Tr. at 24 (emphasis and citation omitted).

## III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner

must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The three issues Plaintiff raises are addressed below in the following order: first, whether the ALJ "erred in failing to realize that the severity of [Plaintiff's] bipolar disorder impacts her [substance abuse and] ability to be compliant with medications"; second, whether the ALJ "failed to articulate good reasons for not crediting the treating opinions of Dr. Sanchez and Dr. Martinez and instead deciding to credit the nonexamining opinions of the state agency consultants and the medical expert"; and third, whether the ALJ "failed to explain [his] reasons for not crediting the opinion of Dr. Harrison that [Plaintiff's] psychiatric symptoms are compounded by her hypothyroidism."  Pl.'s Br. at 1, 10-25 (emphasis omitted).

## A. Effect of Bipolar Disorder on Medication Noncompliance and Substance Abuse

Plaintiff argues that "the ALJ erred in failing to analyze whether [Plaintiff's] noncompliance and substance use was within her control due to her bipolar disorder and in using these factors to discredit her testimony and the medical opinions in this case."  Id. at 21; see id. at 17-21.

As noted, the ALJ found that Plaintiff's "severe impairments" were "bipolar disorder and [a] history of alcohol and prescription drug abuse," Tr. at 15 (emphasis and citation omitted), and the ALJ summarized reports concerning Plaintiff's continuing treatment for bipolar disorder, her substance abuse, and her failure to comply with her prescriptions, Tr. at 19-20.  Rather than consider whether Plaintiff's bipolar disorder contributed to her

-6-

medication noncompliance and substance abuse, the ALJ found that "[t]he record shows [Plaintiff's] bipolar symptoms are exacerbated by stress and medication noncompliance." Tr. at 16.  The ALJ determined that "[t]he record shows that, when taking her medications properly, [Plaintiff] is able to work."  Tr. at 22.  Partly on that basis, the ALJ discounted the opinion of treating psychiatrist Dr. Martinez that Plaintiff "was not able to maintain a job position due to her mental health symptoms."  Tr. at 22.  The ALJ also found that Plaintiff's statements "regarding her mental inability to work" were not credible because Plaintiff's bipolar "episodes were associated with [Plaintiff's] medical noncompliance or misuse of medications or alcohol use."  Tr. at 22.  The ALJ again noted that "when taking her medications properly, [Plaintiff's] symptoms decrease to the point where she can function quite well."  Tr. at 22.

As the ALJ acknowledged, Plaintiff's treatment records suggest that Plaintiff periodically struggled with medication compliance and substance abuse.  <u>See</u> Tr. at 19-22. Reports in June 2009, for instance, indicate that Plaintiff "took all of [her] Klonopin in 12 days because '[her] mother was at [her] house,'" Tr. at 732, and that she stopped taking her prescribed Trazodone, Tr. at 729.  A report in July 2009 indicates that Plaintiff "has been having significant difficulty taking her medications for sleep as prescribed."  Tr. at 718.  The report also recounts that Plaintiff "took excessive amounts of [A]mbien CR and was up at night writing on the dryer with magic marker" but had "no recollection of doing this."  Tr. at 718.  Another report later in July 2009 recounts similar episodes.  <u>See</u> Tr. at 718.  It states that Plaintiff "does not know if she takes her medications or how much she is taking," but that she "apparently has taken an excessive amount of Lexapro."  Tr. at 718.  It further states that

"it is not clear if she has been taking the [L]amictal or the Wellbutrin."  Tr. at 715.  On July

26, 2009, Plaintiff was admitted to the hospital "complaining of increasingly manic behavior."

Tr. at 321.  The hospital report indicates that Plaintiff "state[d] that she felt she could not trust

herself and that she has been over taking her medications in an attempt to 'make [her]self

feel better.'"  Tr. at 321.  One treatment report from February 2012 states that Plaintiff "is

benzodiazepine dependent," Tr. at 1151, while another states that she "had a DUI recently"

and "totaled her car," Tr. at 1153.

As  Plaintiff  points  out,  a  number  of  courts  have  recognized  the  importance  of

considering whether a claimant's bipolar disorder or other mental illness contributes to the

claimant's noncompliance with medication.  See Jelinek v. Astrue, 662 F.3d 805, 814 (7th

Cir. 2011) (stating that the United States Court of Appeals for the Seventh Circuit has "often

observed that bipolar disorder . . . is by nature episodic and admits to regular fluctuations

even under proper treatment" and has therefore held that "ALJs assessing claimants with

bipolar disorder must consider possible alternative explanations before concluding that

non-compliance with medication supports an adverse credibility inference") (citations

omitted); Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) (stating that "[c]ourts

considering whether a good reason supports a claimant's failure to comply with prescribed

treatment have recognized psychological and emotional difficulties may deprive a claimant

of the rationality to decide whether to continue treatment or medication") (citations and

internal quotation omitted); see also Garrison v. Colvin, 759 F.3d 995, 1018 n.24 (9th Cir.

2014) (stating that the court "do[es] not punish the mentally ill for occasionally going off their

medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions") (citations omitted).

Plaintiff also notes that this issue was raised at the hearing. Pl.'s Br. at 20-21. When asked if it is "often difficult for a bipolar person to comply" with prescribed medication, the ME, clinical psychologist Dr. Kronberger, replied, "Yes. It could be—it could pose a risk . . . ." Tr. at 55. Dr. Kronberger, however, did not seem to think this risk applied to Plaintiff. He went on as follows: "I think we're dealing with somebody who is educated and in a health specialty [as a nurse]. I believe that she was fully aware of the dangers of not staying with the medicines as prescribed." Tr. at 55. This statement, however, does not actually indicate whether Plaintiff's bipolar disorder contributes to her medication noncompliance, regardless of her awareness of the importance of compliance. See Pate-Fires, 564 F.3d at 945 (noting "the critical distinction between [a claimant's] awareness of the need to take her medication and the question whether her noncompliance with her medication was a medically-determinable symptom of her mental illness"). In addition to recognizing that bipolar disorder may create a "risk" of medication noncompliance, Dr. Kronberger also discussed the tendency of those with bipolar disorder to abuse alcohol and drugs as a way of "manag[ing] their own mood swings." Tr. at 53. He explained that "it goes in with the grandiosity of the person who's bipolar when they're on a high, when they think that they can manage things and they're impulsive and they have racing thoughts." Tr. at 53. He stated that "alcohol is one of the preferred drugs that they use to slow themselves down." Tr. at 53.

Defendant contends that Plaintiff's argument concerning bipolar disorder and noncompliance is meritless because Plaintiff does not cite controlling case law, Plaintiff did

not raise the issue before the ALJ, and other reasons aside from noncompliance support the ALJ's disability determination.  Def.'s Mem. at 16-20.  The undersigned disagrees.  As indicated above, the ALJ addressed Plaintiff's noncompliance with medication as a basis to discredit the opinion of treating psychiatrist Dr. Martinez and to find Plaintiff's statements not credible.  See Tr. at 22.  The ALJ seems to have dismissed the seriousness of Plaintiff's bipolar episodes as being "associated with [her] medical noncompliance or misuse of medications or alcohol use," as though the bipolar episodes were only effects of this conduct. Tr. at 22.  The Decision never addresses the possibility that bipolar disorder may create a risk of alcohol and substance abuse and medication noncompliance, despite that Dr. Kronberger's hearing testimony acknowledged this possibility.

The undersigned finds that this matter is due to be remanded for the ALJ to consider whether Plaintiff's bipolar disorder contributed to her substance abuse and medication noncompliance.  The ALJ shall also reconsider other matters as necessary, including Plaintiff's credibility and the medical opinions of Dr. Martinez, Dr. Kronberger, and the state agency consultants.

## B.  Medical Opinion of Dr. Sanchez

Plaintiff argues that the ALJ "failed to articulate good reasons for not crediting the treating opinions of Dr. Sanchez and Dr. Martinez and instead deciding to credit the nonexamining opinions of the state agency consultants and the [ME, Dr. Kronberger]." Pl.'s Br. at 1, 10 (emphasis omitted); see id. at 10-17.  Because the opinions of Dr. Martinez, Dr. Kronberger, and the state agency consultants may require reconsideration, as noted above, other arguments concerning those opinions need not be addressed.  The undersigned first

summarizes the applicable law with respect to medical opinions and then addresses the ALJ's analysis of Dr. Sanchez's opinion.

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide

---

[4]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[5]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir.1987)); <u>see also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, according to the administrative transcript, psychiatrist Dr. Sanchez treated Plaintiff between June and October 2012. Tr. at 1253-63. As a treating psychiatrist, Dr. Sanchez's opinion was entitled to significant weight unless the ALJ clearly articulated reasons showing good cause to discount it. <u>See</u> <u>Lewis</u>, 125 F.3d at 1440. Plaintiff contends that the ALJ erred by failing to "specifically and adequately explain why he was not crediting Dr. Sanchez's opinion." Pl.'s Br. at 16. Plaintiff further argues that, though Dr. Sanchez's treatment of Plaintiff came after Plaintiff's last-insured date of December 31, 2010, Dr. Sanchez's opinion "corroborated the opinion of Dr. Martinez as to [Plaintiff's] past history" and "sheds light on [Plaintiff's] capacity" in the relevant period. <u>Id.</u>

The ALJ mentioned Dr. Sanchez twice in the Decision, but the ALJ did not indicate the weight given to Dr. Sanchez's opinion or articulate any reasons for discounting it. First, the ALJ stated that progress notes from Dr. Sanchez "indicate that [Plaintiff] has responded positively to her treatment." Tr. at 20. Second, the ALJ stated that, "[m]ost recently, on November 6, 2012, Dr. Sanchez opined that [Plaintiff] is unable to return to her profession

-13-

as a nurse" and "that [Plaintiff] will have difficulties maintaining any position of responsibility due to her uncontrolled symptomatology."  Tr. at 20; see Tr. at 1253-54 (letter from Dr. Sanchez to Plaintiff's representative dated November 6, 2012).

Notwithstanding the ALJ's failure to indicate the weight given to Dr. Sanchez's opinion, Defendant contends that the ALJ sufficiently "considered" the opinion by summarizing its "pertinent elements."  Def.'s Mem. at 12 (quoting Winschel, 631 F.3d at 1179).  As noted, however, the ALJ was obligated not just to "consider" the treating opinion of Dr. Sanchez, but to give it significant weight or articulate good cause to discount it.  See Lewis, 125 F.3d at 1440.  The Decision offers no indication that the ALJ gave significant weight to Dr. Sanchez's opinion that Plaintiff "will [have] a great deal of difficulty maintaining any position of responsibility," nor does it state any reasons for discounting the opinion.  See Tr. at 13-24 (ALJ's Decision); Tr. at 1253 (letter from Dr. Sanchez).

Defendant also contends that "the ALJ was under no obligation to consider [Dr. Sanchez's] opinion" because it was issued "nearly two years after" the period relevant to Plaintiff's DIB application.  Def.'s Mem. at 9.  If the ALJ rejected the opinion due to its untimeliness, however, then the ALJ was required to clearly articulate that reason.  See Winschel, 631 F.3d at 1179 (stating that "[i]t is possible that the ALJ considered and rejected [certain] medical opinions, but without clearly articulated grounds for such a rejection, [the court] cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence").

Also, as Plaintiff contends, the opinion arguably bears on the relevant period, which occurred between March 15, 2007 and December 31, 2010.  Pl.'s Br. at 16-17; see Tr. at 24

(ALJ's Decision indicating the period relevant to Plaintiff's DIB application).  In Dr. Sanchez's November 2012 letter, he stated that Plaintiff was forty-seven (47) years old and that she "carries a chronic psychiatric condition which began in her mid-twenties that insidiously worsened."  Tr. at 1253.  He indicated that Plaintiff "has had at least four major psychotic episodes."  Tr. at 1253.  In particular, Dr. Sanchez described how, at age forty-two (42), Plaintiff had "a full psychotic episode, became delusional, agitated, and required a one month hospitalization."  Tr. at 1253.  He also stated that her "psychiatric condition has remained significantly and progressively depressed to the point that she became psychologically paralyzed for approximately two years."  Tr. at 1253.

Because the ALJ does not appear to have given significant weight to Dr. Sanchez's opinion and did not articulate reasons for discounting it, the undersigned finds that this matter is due to be remanded for the ALJ to reconsider Dr. Sanchez's opinion, clearly specify the weight assigned to it, and articulate the reasons therefor.

## C. Effect of Hypothyroidism on Bipolar Disorder

Plaintiff argues that "[t]he ALJ erred in failing to realize that [Plaintiff's] hypothyroidism compounds her bipolar symptoms and makes it harder to control and in failing to address the interaction between hypothyroidism and bipolar disorder."  Pl.'s Br. at 21 (emphasis omitted); see id. at 21-25.  Naval Hospital treatment records between August and October 2010 address Plaintiff's hypothyroidism.  See Tr. at 586, 591-93, 598, 600, 605-07, 612-13.  They indicate that Plaintiff had a "h[istory] of hypothyroidism for at least 4 y[ea]rs," Tr. at 591 (capitalization omitted), that this condition recently had worsened, Tr. at 612-13, and that her thyroid medication was increased, Tr. at 598, 605-06, 612.  To support her assertion that her

"hypothyroidism compounds her bipolar symptoms," Plaintiff points in particular to a Naval Hospital treatment record from September 2010, signed by physician Dr. Harrison. Pl.'s Br. at 21, 23-24; see Tr. at 606. Dr. Harrison's assessment of Plaintiff included the following note about her hypothyroidism: "[U]nderlying severe depression and bipolar on mult[iple] med[ication]s including lithium. [Symptoms] compounded by []hypothyroidism." Tr. at 606.

In the Decision, the ALJ found that "[t]here is no indication in the record that [Plaintiff's hypothyroidism] cause[d] more than minimal functional limitations prior to her date last insured." Tr. at 16. The ALJ did not address the possibility that Plaintiff's hypothyroidism may have "compounded" her bipolar disorder symptoms, as suggested by Dr. Harrison's treatment note. Because "the ALJ must consider the combined effects of a claimant's impairments in determining whether she is disabled," Walker, 826 F.2d at 1001, and given that this matter is due to be remanded for further consideration, on remand the ALJ shall consider whether Plaintiff's hypothyroidism aggravated her bipolar symptoms.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (a) Consider whether Plaintiff's bipolar disorder contributed to her substance abuse and noncompliance with prescribed medications;

> (b) If necessary, reconsider Plaintiff's credibility and the medical opinions of Dr. Martinez, Dr. Kronberger, and the state agency consultants;

-16-

> (c)    Reconsider the opinion of Dr. Sanchez, clearly specify the weight assigned to it, and articulate the reasons therefor;
>
> (d)    Consider whether Plaintiff's hypothyroidism aggravated her bipolar disorder symptoms; and
>
> (e)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2015.


_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge


clr
Copies to:
Counsel of record